UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH DONOGHUE,

                              Plaintiff,

             -v.-

THOMAS GAD,

                              Defendant,

Y-MABS THERAPEUTICS, INC.,

                    Nominal Defendant.

21 Civ. 7182 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Deborah Donoghue brings this action pursuant to Section 16(b)

of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15

U.S.C. § 78p(b), on behalf of nominal defendant Y-mAbs Therapeutics, Inc. ("Y-

mAbs").  Plaintiff is a stockholder of Y-mAbs, and she alleges that Defendant

Thomas Gad violated the short-swing profits provisions of Section 16(b) by

engaging in purchases and sales of Y-mAbs common stock within a six-month

period.  Plaintiff seeks disgorgement of any short-swing profits realized by

Defendant for the benefit of Y-mAbs.  Defendant has moved to dismiss the

Complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6).  For the reasons that follow, the Court denies Defendant's

motion.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff owns securities issued by Y-mAbs.  (Compl. ¶ 2).  Y-mAbs is a
Delaware corporation that has its principal offices in New York City.  (*Id.*).  At
all times relevant here, Defendant was an officer and director of Y-mAbs.  (*Id.*
at ¶ 7).  The common stock of Y-mAbs is traded on the NASDAQ Global
Markets, a national security exchange located in New York.  (*Id.* at ¶ 3).

This case arises out of Defendant's alleged purchase and sales of
common stock in Y-mAbs.  On March 3, 2021, Defendant's business entity,
GAD Enterprises, LLC, and nonparty WG Biotech ApS ("WG Biotech") executed
an exchange agreement that provided that Defendant would convey his 20,565
shares of WG Biotech in exchange for 1,029,927 shares of Y-mAbs common
stock held by WG Biotech (the "Distribution Agreement").  (Distribution

---

[1]     The facts of this Opinion are drawn primarily from the Complaint ("Compl." (Dkt. #1)),
which is the operative pleading in this case.  The Court also sources additional facts
from a subset of the exhibits attached to Defendant's declaration submitted in support
of his motion to dismiss ("Gad Decl." (Dkt. #32)).  In particular, the Court considers
documents publicly filed with the United States Securities and Exchange Commission
(the "SEC") (*see* Gad Decl., Ex. B-E) and the agreement between GAD Enterprises, LLC,
and WG Biotech ApS dated March 3, 2021 (the "Distribution Agreement (*id.*, Ex. F)).
*See Tongue* v. *Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (explaining that on a motion to
dismiss, "[t]he Court may … consider any written instrument attached to the complaint,
statements or documents incorporated into the complaint by reference, legally required
public disclosure documents filed with the SEC, and documents possessed by or known
to the plaintiff upon which it relied in bringing the suit" (internal quotation marks
omitted)); *see also* Discussion, Sec. B.1 (discussing the documents that may be
considered in resolving Defendant's motion).

   For ease of reference, the Court refers to Defendant's memorandum of law in support of
his motion to dismiss as "Def. Br." (Dkt. #30); to Plaintiff's memorandum of law in
opposition to Defendant's motion as "Pl. Opp." (Dkt. #33); and to Defendant's reply
memorandum of law as "Def. Reply" (Dkt. #35).

Agreement, Recitals).[2]  The Distribution Agreement further provided that the signatories' contemplated stock exchange would take place on March 9, 2021, "or at such other time … as agreed to by the [p]arties[.]"  (*Id.*, § 2.1).

Plaintiff alleges that following the execution of the Distribution Agreement, "[o]n or about March 10, 2021, [Defendant] purchased 1,029,927 shares of the common stock of Y-mAbs in a private purchase from WG Biotech … in which he had an 18.70% ownership stake in the form of 20,565 [shares] of WG Biotech[.]"  (Compl. ¶ 13; *see also* Gad Decl., Ex. E (SEC filing signed by Defendant on March 12, 2021, reporting the transaction)).  At the time of this exchange, the "fair market value of the Y-mAbs shares" was $35.30 per share.  (Compl. ¶ 15; *see also* Gad Decl., Ex. E).  "Within less than six months before and less than six months after March 10, 2021," Plaintiff alleges, Defendant "made numerous open market sales of an aggregate of 249,569 shares" of Y-mAbs common stock "at higher prices than he paid for the purchases of shares of the same class on March 10, 2021."  (Compl. ¶ 16).  According to Plaintiff, as a result of these alleged sales, Defendant realized significant short-swing profits of "not less than $2,543,000."  (*Id.* at ¶ 17).

Plaintiff claims that she made demands for prosecution on Y-mAbs on June 8, 2021, and August 6, 2021.  (Compl. ¶ 10).  "More than 60 days have passed since the first of these demands and there has been no response."  (*Id.*).

---

[2]    Defendant represents that GAD Enterprises is "wholly owned and controlled" by Defendant.  (*See* Def. Br. 4; *see also* Gad Decl., Ex. E).  WG Biotech, on the other hand, is described as a "Danish corporation … organized and existing under the laws of the Kingdom of Denmark."  (Distribution Agreement).

In Plaintiff's words, "[f]urther delay by … Plaintiff in the initiation of suit would be a futile gesture." (*Id.*).  Plaintiff thus seeks disgorgement of Defendant's alleged short-swing profits pursuant to the Section 16(b) of the Exchange Act.

## B.    Procedural Background

Plaintiff initiated this case with the filing of a Complaint on August 25, 2021.  (Dkt. #1).  On November 29, 2021, Y-mAbs filed its answer to the complaint.  (Dkt. #28).  That same day, Defendant filed a pre-motion letter requesting a conference to discuss his anticipated motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. #26).  In an email sent to the Court and Defendant's counsel, Plaintiff argued that Defendant's anticipated motion relied on factual assertions that could not be considered at the motion to dismiss stage.[3]

At the initial pretrial conference, the Court heard oral argument on the parties' pre-motion submissions and set a briefing schedule for Defendant's motion to dismiss.  (*See* Minute Entry for December 1, 2021).  Following the conference, on December 17, 2021, Defendant filed his motion and supporting papers.  (Dkt. #29-32).  Plaintiff filed her opposition brief on December 31, 2021.  (Dkt. #33).  Defendant filed a reply brief in further support of his motion on January 12, 2022.  (Dkt. #35).  Accordingly, Defendant's motion to dismiss is fully briefed and ripe for the Court's decision.

---

[3]    Although the Court instructed Plaintiff's counsel to file his email as a letter on the docket, counsel has not done so as of the date of this Opinion.

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of Plaintiff's claims, the Court must accept as true all well-pleaded factual allegations contained in the operative Complaint.  *Id.*  Additionally, the Court may consider any written instrument attached to the Complaint as an exhibit, any statements or documents incorporated by reference in the Complaint, documents that are "integral" to the Complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

### B.   Analysis

Plaintiff alleges that Defendant violated Section 16(b) by purchasing and selling Y-mAbs common stock six months prior to and following March 10, 2021.  (Compl. ¶¶ 12-21).  Defendant moves to dismiss Plaintiff's claims on the basis that his alleged acquisition of Y-mAbs common stock on March 10, 2021,

is exempt from Section 16(b) under SEC Rule 16a-13, 17 C.F.R. § 240.16a-13,

and thus his alleged stock sales before and after that date did not violate the

Exchange Act.  (Def. Br. 1, 13-19).  In making this argument, Defendant relies

almost exclusively on documents that were submitted for the first time with his

moving papers.  (*See id.* at 17-18; *see also* Wedell-Wedellsborg Decl. (Dkt. #31),

Ex. 1; Gad Decl., Ex. A-F).  Devoting almost the entirety of her opposition brief

to the issue, Plaintiff contests the Court's ability to consider Defendant's

extrinsic documents at the motion to dismiss stage.  (*See* Pl. Opp. 2-5).

Given the parties' disagreement as to the documents that may properly

be considered in resolving Defendant's motion, the Court begins its discussion

by addressing that threshold issue before turning to the merits of Defendant's

motion.  As explained in greater detail below, the Court finds that it may

consider some, but not all, of Defendant's extrinsic documents, and may do so

only for certain limited purposes.  The Court further finds that the present

record does not permit it to conclude as a matter of law that Defendant's

acquisition of Y-mAbs common stock on March 10, 2021, is exempt from

Section 16(b) under Rule 16a-13, and therefore denies Defendant's motion to

dismiss.

### 1.    The Court May Consider Some, But Not All, of Defendant's Extrinsic Documents

Defendant's motion to dismiss relies in substantial part on several

exhibits that were attached to the declarations of Defendant and Johan Wedell-

Wedellsborg submitted in support of Defendant's motion.  (*See generally* Gad

Decl.; Wedell-Wedellsborg Decl.).[4]   These exhibits fall into two broad categories: (i) public SEC filings and (ii) non-public documents related to Defendant's investment in WG Biotech.   This second grouping of exhibits, in turn, comprises three documents: (i) the Owner/Shareholders Agreement between Defendant, GAD Enterprises, and GAD Management, LLC, on the one hand, and Johan Wedell-Wedellsborg and WG Biotech, on the other hand (the "Shareholders Agreement" (Gad Decl., Ex. A)); (ii) WG Biotech Shareholder Registers (the "Shareholder Registers" (Wedell-Wedellsborg Decl., Ex. 1)); and (iii) the Distribution Agreement, which provided for the distribution of 1,029,927 shares of Y-mAbs common stock from WG Biotech to GAD Enterprises, dated March 3, 2021 (*see* Distribution Agreement).

Defendant concedes that his extrinsic documents are neither attached to, nor incorporated by reference in, the Complaint, but contends that the Court may nonetheless consider the documents because they are integral to Plaintiff's pleading.   (*See* Def. Br. 12).   "For a document to be integral to a complaint, 'the plaintiff must have [i] actual notice of the extraneous information and [ii] relied upon the document in framing the complaint.'"   *Pucilowski* v. *Spotify USA, Inc.*, No. 21 Civ. 1653 (ER), 2022 WL 836797, at *3 (S.D.N.Y. Mar. 21, 2022) (quoting *DeLuca* v. *AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)) (internal quotation marks and alterations omitted).   Observing that "this standard has been misinterpreted on occasion," the Second Circuit has

---

[4]     Per his declaration, Wedell-Wedellsborg is the Chief Executive Officer and Managing Director of WG Biotech.   (Wedell-Wedellsborg Decl. ¶ 1).

stressed that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (emphasis in original). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason — usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim — was not attached to the complaint." *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Further, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

The Court addresses its ability to consider each of Defendant's documents in light of these legal principles in the following subsections.

### a. Public SEC Filings

The Court begins by addressing the admissibility of the public SEC filings submitted with Defendant's moving papers. The first of these documents is an Initial Statement of Beneficial Ownership of Securities that Defendant filed with the SEC on September 20, 2018 (the "Form 3"). (Gad Decl., Ex. B). In the Form 3, Defendant reported an indirect ownership interest in Y-mAbs common stock held by GAD Enterprises and WG Biotech. (*Id.*). The

Form 3 explained that Defendant "is [the] sole member and manager of GAD Enterprises, LLC and as such … has sole voting and dispositive power with respect to such shares." (*Id.*). And it further stated that WG Biotech "owns 5,010,000 shares of [Y-mAbs] common stock" and that "GAD Enterprises, LLC … owns 20.57% of [WG Biotech] but has no voting or dispositive power over the shares of common stock held by [WG Biotech.]" (*Id.*).

The remainder of the SEC filings submitted in support of Defendant's motion consist of Statements of Changes in Beneficial Ownership of Securities that Defendant filed with the SEC between December 13, 2018, and March 12, 2021 (the "Form 4s"). (Gad Decl., Ex. C-E). The most recent of these Form 4s reported that WG Biotech "transferred 1,029,927 shares of the Common Stock of Y-mAbs … to GAD Enterprises … in exchange for 20,565 ordinary shares of WG Biotech[.]" (*Id.*, Ex. E). The Form 4 further stated that "[t]hese shares were previously reported as beneficially owned by [Defendant] based on such person's 18.70% ownership interest in WG Biotech ApS, which was exchanged for such shares pursuant to an exchange agreement." (*Id.*). Previewing Defendant's argument in support of his present motion, the Form 4 claimed that "[a]s a result" of this exchange of Y-mAbs stock for WG Biotech shares, "there is no change in the total shares beneficially owned by [Defendant], just a change in the indirect nature of such beneficial ownership interest." (*Id.*).

Here, the Court finds that it may take judicial notice of the Form 3 and Form 4s. The Second Circuit has consistently held that in the securities context, courts may consider "public disclosure documents required by law to

be, and that have been, filed with the SEC[.]" *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (quoting *Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)); *see also Donoghue* v. *Oaktree Specialty Lending Corp.*, No. 21 Civ. 4770 (PAE), 2022 WL 1213639, at *6 n.9 (S.D.N.Y. Apr. 25, 2022) (observing that "[w]here public documents filed with the [SEC] are attached to a defendant's motion to dismiss, a court may consider them without converting a motion to dismiss into a summary judgment motion" (quoting *Ashland Inc.* v. *Morgan Stanley & Co.*, 700 F. Supp. 2d 453, 461 n.4 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011))).[5]

Importantly, the Court may consider the Form 3 and Form 4s described above "'only to determine *what* the documents stated,' and '*not to prove the truth of their contents.*'" *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (emphasis in original); *see also Oaktree Specialty Lending Corp.*, 2022 WL 1213639, at *6 n.9 (explaining that "[o]n a motion to dismiss, courts are permitted to take judicial notice of documents that are integral to the complaint and of materials in the public record ... for the limited purpose of noting what the documents state, rather than to prove the truth of their

---

[5]     Plaintiff does not dispute the Court's ability to consider the Form 3 and Form 4s, at least insofar as the Court's review is limited to "the fact of their filing, for their contents[,] but not for their truth." (Pl. Opp. 2). In fact, in a declaration submitted in opposition to Defendant's motion, Plaintiff's counsel submitted two Form 4s that were included in Defendant's moving papers. (*See* Tauber Decl., Ex. A, B). Plaintiff's counsel states that the second of these Form 4s, in which Defendant reported the March 10, 2021 acquisition of Y-mAbs common stock, is "described at Paragraph 13 of the Complaint[.]" (*Id.* at ¶ 3 (emphasis omitted)).

contents (internal quotation marks and alterations omitted))[6]; *Donoghue* v.

*Smith*, No. 21 Civ. 4811 (JMF), 2022 WL 1225338, at *6 (S.D.N.Y. Apr. 26,

2022) (considering certain SEC Form 4s in connection with a motion to

dismiss, but not "for their truth") (citing *Chechele* v. *Scheetz*, 466 F. App'x 39,

40-41 (2d Cir. 2012) (summary order)); *Wagner* v. *Royal Bank of Scotland Grp.*

*PLC*, No. 12 Civ. 8726 (PAC), 2013 WL 4779039, at *3 (S.D.N.Y. Sept. 5, 2013)

(finding at the motion to dismiss stage that an SEC Form 4 cannot be

considered for the truth of the matter asserted in it).[7]

---

[6]     Because many Section 16(b) lawsuits are brought by a small number of plaintiffs, the
Court will use the name of the defendant in the short form of certain citations to avoid
confusion.

[7]     In his reply brief, Defendant appears to argue that the Court may consider the Form 3
and Form 4s for the truth of the matters asserted in them. (*See* Def. Reply 6 (citing
*Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ("*Cortec*")). The Court
understands Defendant's argument to be premised on a claimed distinction between
documents of which a court takes judicial notice and documents that are integral to the
complaint. (*See id.* (disputing Plaintiff's argument that a court may review SEC filings
for the fact of their filing and their contents, but not for the truth of their contents, on
the basis that Defendant "is not seeking to introduce his [SEC] filings simply because
they are [SEC] filings, but … because Plaintiff relied on the information in them when
framing her Complaint")). Where a court takes judicial notice of a document, the
argument goes, the court cannot consider the document for its truth. By contrast,
Defendant suggests, where a court finds a document that to be integral to the
complaint, it may consider the document for its truth.

The Court is not aware of any authority that supports Defendant's proffered distinction.
To begin, where courts have deemed SEC filings to be integral to the complaint, they
have usually done so in cases alleging fraud. *See Roth* v. *Jennings*, 489 F.3d 499, 509
(2d Cir. 2007). "When a complaint alleges, for example, that a document filed with the
SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule
12(b)(6) motion, to examine the document to see whether or not those facts were
disclosed." *Id.* Setting aside that Plaintiff is not alleging fraud in this case, the fact
remains that even where a court finds that SEC filings are integral to the complaint,
"the court is to consider them on a Rule 12(b)(6) motion 'only to determine *what* the
documents stated,' and '*not to prove the truth of their contents.*'" *Id.* (quoting *Kramer* v.
*Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) (emphasis in original); *see also*
*Chechele* v. *Scheetz*, 466 F. App'x 39, 40-41 (2d Cir. 2012) (summary order) (finding
that the district court did not err by "declin[ing] to consider certain SEC filings, which
were not incorporated into the complaint, for the truth of their assertions"). Similarly,
"[i]f the court takes judicial notice [of the SEC filings], it does so in order 'to
determine *what* statements [they] contained' — but '*again not for the truth of the matters*

### b.     Distribution Agreement

Next, the Court addresses whether it may consider the Distribution

Agreement in resolving Defendant's motion.  The Distribution Agreement,

executed by GAD Enterprises and WG Biotech on March 3, 2021, recites that

"WG Biotech currently holds 5,508,392 shares of common stock … of Y-

mAbs … and desires to exchange 1,029,927 of its shares of Y-mAbs common

stock … for 20,565 ordinary shares … of WG Biotech held by [GAD

Enterprises]" and that GAD Enterprises "desires to exchange all of its WG

Biotech Shares for the Y-mAbs Shares held by WG Biotech[.]"  (Distribution

Agreement, Recitals).  The Distribution Agreement then provides that GAD

Enterprises agrees to "exchange, transfer and assign" its entire "right, title,

interest in and to all of its WG Biotech Shares in exchange for the assignment

and transfer by WG Biotech of the Y-mAbs Shares to GAD [Enterprises]."  (*Id.*,

§ 1.1).  The Distribution Agreement further provides that this transaction

would occur on March 9, 2021, or at any other agreed-upon date.  (*Id.*, § 2.1).

---

*asserted.*'"  *Roth*, 489 F.3d at 509 (quoting *Kramer*, 937 F.2d at 774) (emphasis in
original).

Thus, whether the Court considers the SEC filings attached to Defendant's declaration
because they are integral to the Complaint or because it may take judicial notice of
such records, its review is limited to determining *what* the records state, not whether
what the documents state is *true*.  *See Wagner* v. *Royal Bank of Scotland Grp. PLC*,
No. 12 Civ. 8726 (PAC), 2013 WL 4779039, at *3 (S.D.N.Y. Sept. 5, 2013) (rejecting a
similar argument premised on the defendant's interpretation of *Cortec*); *see also City of
Austin Police Ret. Sys.* v. *Kinross Gold Corp.*, 957 F. Supp. 2d 277, 289 (S.D.N.Y. 2013)
(explaining that "where a court takes judicial notice of a public record that is integral to
a fraud complaint, it does so in order 'to determine *what* statements [they] contained —
but '*again not for the truth of the matters asserted*'" (internal quotation marks omitted));
*In re Lehman Bros. Sec. & ERISA Litig.*, 903 F. Supp. 2d 152, 168-69 (S.D.N.Y. 2012)
(stating that "a document that is integral to a complaint in the sense that the plaintiff
had actual notice of and relied upon it in framing the complaint, is properly considered,
albeit not for the truth of the matters asserted").

Here, the Court finds that the Distribution Agreement is integral to the Complaint and therefore may be considered in resolving Defendant's present motion. As stated earlier, the Complaint alleges that "[o]n or about March 10, 2021, [Defendant] purchased 1,029,927 shares of the common stock of Y-mAbs in a private purchase from WG Biotech" and that Defendant "paid for his purchase of the Y-mAbs shares by surrendering his entire ownership stake in WB Biotech[.]" (Compl. ¶¶ 13-14). As the agreement that effectuated this purported sale and purchase, the Distribution Agreement is integral to Plaintiff's pleading. *See United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 107-08 (2d Cir. 2021) (observing that the Second Circuit has found documents to be integral to a pleading where "the documents consisted of emails that were part of a negotiation exchange that the plaintiff identified as the basis for its good faith and fair dealing claim or consisted of contracts referenced in the complaint which were essential to the claims" (citing *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), *and Chambers*, 282 F.3d at 153 n.4)). While Plaintiff contests the Court's ability to consider the Distribution Agreement in resolving Defendant's pending motion to dismiss, she does not dispute its authenticity or relevance to her claims. (*See* Pl. Opp. 5). To the contrary, Plaintiff suggests that the Agreement "support[s] by its every word [P]laintiff's claim." (*Id.*). The Court therefore finds that it may consider the Distribution Agreement in resolving Defendant's motion.

### c.   Shareholder Registers and Shareholders Agreement

The Court concludes this portion of the Opinion by addressing whether it may consider the Shareholder Registers and Shareholders Agreement.  Briefly stated, the Shareholder Registers "identify[] all of WG Biotech's investors, the number of WG Biotech shares owned by each of the investors over various years, and the associated number of Y-mAbs shares that are and have been indirectly and beneficially owned by each of the investors[,] including GAD Enterprises."  (Wedell-Wedellsborg Decl. ¶ 2; *see also* Shareholder Registers). The Shareholders Agreement, meanwhile, is an agreement governing Defendant's and GAD Enterprises's investment in WG Biotech.  (*See* Shareholders Agreement; *see also* Def. Br. 4-6 (discussing the Shareholders Agreement and Defendant's investment in WG Biotech in greater detail)).

The Court finds that the Shareholder Registers and Shareholders Agreement are not integral to the Complaint and cannot be considered for purposes of resolving Defendant's motion.  In contrast with the Form 3, the Form 4s, and the Distribution Agreement, these shareholder documents were "not alluded to, and did not form the basis for, the allegations or claims in the Complaint."  *AECOM*, 19 F.4th at 108.  Indeed, while Defendant asserts that Plaintiff relied on the SEC filings "to frame [her] pleading" (Def. Br. 12 (citing Compl. ¶¶ 13-14)), he mounts no similar argument with respect to these documents.[8]

---

[8]     *Cortec*, 949 F.2d at 42, on which Defendant relies throughout his moving papers and which is discussed at several points in this Opinion, goes a long way towards showing why the Shareholder Registers and Shareholders Agreements are not integral to the

Defendant's attempts to shoehorn these documents into the record are unavailing.  Despite his apparent concession that Plaintiff did not rely on the Shareholder Registers or Shareholders Agreements in drafting the Complaint, Defendant argues nonetheless that Plaintiff's reliance on the Form 3 and Form 4s "open[ed] the door to the information in" the documents.  (Def. Reply 7).  But this argument cannot be squared with the applicable legal standard.  As noted above, a plaintiff's reliance on a document is a "prerequisite" to the court's consideration of the document.  *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 156.  The mere fact that a document is somehow related to a separate, admissible document is therefore insufficient to bring it within the universe of materials that the Court may consider at the motion to dismiss stage.  Nor is it sufficient that these documents, in Defendant's view, undermine part or all of Plaintiff's claims.  "If all that is required to render a document integral to the complaint is that it be favorable to the defendant, possibly thwarting the plaintiff's claims, it would be difficult to imagine a document that could not be considered on a motion to dismiss pursuant to the integral-to-the-complaint

_____

Complaint and cannot be considered at this time.  In *Cortec*, the Second Circuit held that "[d]espite the fact that" certain documents attached to the defendant's motion to dismiss "were neither public disclosure documents required by law to be filed with the SEC, nor documents actually filed with the SEC, nor attached as exhibits to the complaint or incorporated by reference in it, the district court was entitled to consider them in deciding the motion to dismiss." *Id.* at 48.  As reflected in the underlying district court decision, however, the contested documents were "referred to throughout the complaint" and cited in support of the plaintiffs' claims. *Cortec Indus.* v. *Sum Holding L.P.*, No. 90 Civ. 165 (CSH), 1991 WL 3051, at *9 (S.D.N.Y. Jan. 4, 1991), *aff'd in part, rev'd in part sub nom. Cortec*, 949 F.2d at 42.  Here, by contrast, the Complaint does not mention or rely on in any way the terms or existence of the Shareholder Registers or the Shareholders Agreement.

exception." *AECOM*, 19 F.4th at 108.  Accordingly, the Court declines to consider the Shareholder Registers or the Shareholders Agreement.

### 2. The Court Cannot Find on This Record That Defendant's Alleged Purchase Is Exempt from Section 16(b) of the Exchange Act

Having decided which documents may be considered in resolving Defendant's motion, the Court now proceeds to address the merits of the motion.  As noted earlier, Defendant argues that his acquisition of Y-mAbs common stock on March 10, 2021, is exempt from Section 16(b) under Rule 16a-13.  (*See* Def. Br. 13-19).  Plaintiff, for the most part, does not address Defendant's Rule 16a-13 argument, resting instead on her contention that the argument is dependent upon documents that are not properly before the Court.  (*See* Pl. Opp. 2-3).  As set forth below, the Court finds that the available evidence is insufficient to demonstrate that Defendant's alleged acquisition of Y-mAbs stock is exempt under Section 16(b) as a matter of law.

### a. Applicable Law

"To prevent insiders of a securities issuer from trading on material non-public information, Section 16(b) of the Securities Exchange Act of 1934 imposes strict liability on certain insiders of an issuer, requiring them to disgorge to the issuer any profits they realize from short-swing trading in the issuer's securities." *Rubenstein* v. *Int'l Value Advisers, LLC*, 959 F.3d 541, 543 (2d Cir. 2020).  The Exchange Act states in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by [a corporate insider] by reason of his relationship to the issuer, any profit realized by [the insider] from any

16

> purchase and sale, or any sale and purchase, of any
> equity security of such issuer . . . within any period of
> less than six months . . . shall inure to and be
> recoverable by the issuer, irrespective of any intention
> on the part of [the insider].

15 U.S.C. § 78p(b).

"Either the issuer or (as here) a shareholder acting derivatively on the issuer's behalf may bring a lawsuit under [Section] 16(b)." *Rubenstein* v. *Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 388 (S.D.N.Y. 2019), *aff'd*, 959 F.3d at 541. To state a claim under Section 16(b), a plaintiff must plausibly allege: (i) a purchase and (ii) a sale of securities (iii) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (iv) within a six-month period. *Olagues* v. *Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018).

As relevant here, "Rule 16a-13 exempts from Section 16(b) liability '[a] transaction, other than the exercise or conversion of a derivative security or deposit into or withdrawal from a voting trust, that effects only a change in the form of beneficial ownership without changing a person's pecuniary interest in the subject equity securities.'" *Chechele* v. *Standard Gen. L.P.*, No. 20 Civ. 3177 (KPF), 2021 WL 2853438, at *8 (S.D.N.Y. July 8, 2021) (quoting 17 C.F.R. § 240.16a-13). "Rule 16a-1, the SEC regulation implementing Section 16(b), defines 'beneficial owner' as 'any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities[.]'" *Smith*, 2022 WL 1225338, at *4 (quoting *Feder* v. *Frost,* 220 F.3d 29, 33 (2d Cir. 2000))

17

(internal citation and quotation marks omitted).  Relatedly, Rule 16a-1 defines "pecuniary interest" as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities."  17 C.F.R. § 240.16a-1(a)(2)(i).

"While Rule 16a-13 does not itself provide guidance as to what transactions would fall under this exemption, both the SEC and commentators have supplied instructive examples."  *Standard Gen. L.P.*, 2021 WL 2853438, at *8.  Generally, "'change[s] in the form of beneficial ownership'" that are exempted under Rule 16a-13 "typically include changes from indirect to direct ownership over securities (or vice versa)."  *Smith*, 2022 WL 1225338, at *4 (quoting Peter J. Romeo & Alan Dye, SECTION 16 TREATISE AND REPORTING GUIDE § 6.02[3], at 553-54 (5th ed. 2019)).  By way of illustration, the SEC has indicated that "distributions of equity securities from an employee benefit plan to an insider participant would be a mere change in the form of beneficial ownership from indirect to direct where the securities previously had been attributed to the insider."  Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Releases Nos. 34-37260, 35-26524, 61 Fed. Reg. 30376, 30385 n.117 (June 14, 1996).

### b.   Discussion

Defendant argues that his March 10, 2021 acquisition of Y-mAbs common stock is exempt from Section 16(b) under Rule 16a-13 because the transaction resulted in his "ownership and pecuniary interests in the … shares changing from indirect to direct."  (Def. Br. 1).  While Defendant maintains that

he held a direct pecuniary interest in the Y-mAbs common stock after March 2021, he devotes the bulk of his briefing to supporting his claim that he held an indirect interest in the stock prior to that date.  (*See id.* at 17-19).

Defendant asserts that he first acquired an indirect pecuniary interest in the Y-mAbs common stock through GAD Enterprises's Investment in WG Biotech.  (*See* Def. Br. 17, 19).  According to Defendant, "all of WG Biotech's holdings in Y-mAbs common stock were earmarked specifically for each investor … based on each investor's pro rata ownership interest in WG Biotech."  (*Id.* at 2).  Further, GAD Enterprises had both a "right to cause WG Biotech, whose sole revenue came from its Y-mAbs holdings, to distribute to GAD Enterprises its pro-rata percentage interest of the previous year's profits" and an entitlement to "its pro rata portion of the proceeds from any sale of the Y-mAbs shares held by WG Biotech."  (*Id.*).  Relatedly, Defendant seeks to draw support for his claimed indirect interest in the shares from the fact that he "reported in public filings with the [SEC] that he indirectly beneficially owned the Y-mAbs common stock via his minority stake in WG Biotech[.]"  (*Id.*).

As the above discussion demonstrates, Defendant's argument under Rule 16a-13 relies almost exclusively on documents that the Court cannot consider in resolving his motion.  For example, to support his claim that "[a]ll shares of Y-mAbs common stock held by WG Biotech were earmarked" for each investor in WG Biotech, Defendant cites to the Shareholder Registers.  (Def. Br. 18).  Similarly, as evidence of the purported fact that "GAD Enterprises had the unfettered right to receive its pro rata portion of the proceeds from any sale

of the Y-mAbs shares held by WG Biotech[,]" Defendant again points to the

Shareholder Registers, as well as the Shareholders Agreement.  (*Id.*).  Neither of

these documents, however, is properly before the Court, and thus the Court

cannot find that Defendant had an indirect pecuniary interest in the Y-mAbs

shares based on those records.

While Defendant also draws support for his argument from the Form 3

and Form 4s, his "self-serving statements" in these forms "are not the silver

bullets he thinks they are."  *Smith*, 2022 WL 1225338, at *6.  Defendant views

the forms as evidence of the fact that "between late 2018 and the present,"

Defendant reported in these SEC filings "that he indirectly beneficially owned

the Y-mAbs common stock via his minority stake in WG Biotech, with no

challenge from" the SEC or Plaintiff.  (Def. Br. 18).  To be sure, Defendant did

represent in these filings that he held a beneficial ownership interest in the Y-

mAbs shares held by WG Biotech.  (*See, e.g.*, Gad Decl., Ex. B).  As explained

earlier, however, the Court may review these filings "only to determine *what* the

documents stated, and *not to prove the truth of their contents.*"  *Roth*, 489 F.3d

at 509 (emphasis in original) (internal quotation marks omitted).  Consistent

with this limited scope of review, the Court views the Form 3 and Form 4s as

demonstrating that Defendant filed the forms with the SEC and that he

represented to the SEC that he held a beneficial interest in the Y-mAbs shares.

(*See generally* Gad Decl., Ex. B-E).  But the Court cannot conclude based on

these limited observations that Defendant in fact held a beneficial interest in

the Y-mAbs shares, or that whatever pecuniary interest he held in the shares prior to March 10, 2021, remained the same after that date.

Accordingly, on the limited record that may be considered in resolving a motion to dismiss, the Court finds that Defendant has failed to demonstrate that the Rule 16a-13 exemption applies to his March 10, 2021 acquisition of Y-mAbs common stock. Because Defendant has not identified a separate basis for his motion to dismiss, the Court denies the motion.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED.

The parties are hereby ORDERED to submit a proposed case management plan on or before **August 29, 2022**.

The Clerk of Court is directed to terminate the motions at docket entries 26 and 29.

SO ORDERED.

Dated:    August 8, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

21